UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SHERRY ANN KEIPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-CV-366 JD |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Sherry Ann Keiper appeals the denial of her claim for disability insurance benefits. For the following reasons, the Court remands this matter to the Commissioner for further proceedings.

## BACKGROUND

Ms. Keiper filed her initial application for benefits on June 2, 2014, alleging disability beginning May 14, 2014. Ms. Keiper's application was denied initially, on reconsideration, and following an administrative hearing in March 2017 at which she was represented by counsel. At that hearing, the ALJ heard testimony from Ms. Keiper and vocational expert Tobey Andre. The ALJ found that Ms. Keiper had several severe impairments but that she was not disabled since May 14, 2014. *See* 20 C.F.R. § 404.1520. The Appeals Council denied review of the ALJ's decision, making it the final determination of the Commissioner.

## STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707

(7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

## DISCUSSION

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4). These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform relevant past work; and
5. Whether the claimant can perform other work in the community.

20 C.F.R. § 404.1520(a)(4); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, the ALJ must assess the claimant's residual functional capacity ("RFC") between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Ms. Keiper now attacks the ALJ's decision on three main grounds. First, she maintains the ALJ erred in determining that her alleged limitations were not consistent with the record evidence. Second, Ms. Keiper argues that the hypothetical questions posed by the ALJ to the

3

vocational expert did not properly account for all of Ms. Keiper's credible limitations, which infected the ALJ's analysis at step five. And third, Ms. Keiper challenges whether the ALJ was constitutionally appointed, which calls into question the validity of the Commissioner's action in this case. But the Court need only consider the first of these arguments, because the ALJ insufficiently supported his rationale for discounting Ms. Keiper's subjective complaints. This necessitates remand.[1]

A.      **Subjective Complaints**

In crafting Ms. Keiper's RFC, the ALJ found that Ms. Keiper's "statements concerning the intensity, persistence and limiting effects" of her alleged symptoms "are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. 33). "So long as an ALJ gives specific reasons supported by the record," the Court will not overturn his credibility determination unless it is "patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). The ALJ's decision must, however, provide specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and must be sufficiently specific or clearly articulated so the individual and any subsequent reviewers can assess how the adjudicator evaluated the symptoms. SSR 16-3p; *see also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("[A]n ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record."). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009).

Ms. Keiper argues that the ALJ inadequately supported the bases for this conclusion, and the Court agrees. The ALJ critically erred here by: (1) failing to weigh Ms. Keiper's conservative

---

[1] Of course, Ms. Keiper is free to pursue her two remaining substantive arguments on remand.

treatment against her financial situation; (2) succumbing to the temptation to "play doctor"; and (3) "cherry-picking" facts from the record to support his conclusions while ignoring evidence to the contrary. Notably, the Commissioner's response [DE 26] does not address *any* of these issues even though Ms. Keiper's own brief placed them squarely at issue.

    1. *Conservative Treatment and Financial Barriers*

First, the ALJ based his analysis in significant part on his observation that Ms. Keiper has pursued a conservative course of treatment for her various impairments. For example, the ALJ noted that Ms. Keiper has sought no more than "routine treatment" for the osteoarthritis in her hips and for the carpal tunnel symptoms in her hands following surgical intervention in April 2013. (R. 33). Regarding Ms. Keiper's physical impairments as a whole, the ALJ equated the lack of emergency room visits to an indication that her pain is not as severe as alleged. (R. 34). And as to Ms. Keiper's severe depression, anxiety, and attention deficit disorder ("ADD"), the ALJ relied on his observation that she has "predominantly relied on medication alone to treat her mental health symptoms" to discredit the alleged limiting effects associated with those impairments. *Id.*

The record, however, is replete with references to Ms. Keiper's lack of health insurance coverage and her corresponding inability (or difficulty, at least) to afford medication and treatment. In July 2014, the medical record indicates that Ms. Keiper "[was] not taking any of her medications as she was let go from work and does not have insurance or an income." (R. 417, 419). Consultative examiner Dr. R. Gupta noted the same thing in October 2014: "[Ms. Keiper] is prescribed medication at this time, but is unable to afford them due to lack of insurance. … Patient was given a cheaper medication to take for her depression and ADD." (R. 457). That same month, psychological consultant Dr. Chad Edwards observed that Ms. Keiper's

depression indeed had "worsened recently secondary to lack of money for medication and loss of employment. She reported feeling mostly sad for the past two years with the deepest part of her depression lasting 'a month or two' when she ran out of medication." (R. 463). The reviewing psychologists echoed this observation. (R. 104, 117). In November 2014, Ms. Keiper presented to nurse practitioner Gina Moore, who observed that Ms. Keiper "has not been able to afford her medications, but feels she really needs it back." (R. 467). Ms. Keiper's struggles continued until at least June 2015, when nurse practitioner Moore again noted that Ms. Keiper could not afford her medication and discussed plans to switch Ms. Keiper to an alternative prescription for her anxiety. (R. 495). Furthermore, Ms. Keiper explained to the ALJ at the hearing that she had to stop taking Adderall for her ADD in 2014 because she "didn't have the money to pay for it, because it was expensive without, without insurance." (R. 68).

At no point in his analysis did the ALJ consider whether Ms. Keiper's documented inability to afford medication contributed to her conservative treatment.[2] A claimant's inability to afford treatment can excuse the failure to seek such treatment, and by failing to explore this possibility as an explanation for Ms. Keiper's "routine" care, the ALJ committed error. *Myles*, 582 F.3d at 677; *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (noting that "the agency has expressly endorsed the inability to pay as an explanation excusing a claimant's failure to seek treatment"). The ALJ's omission of these considerations requires remand. *See Craft*, 539 F.3d at 679 (remanding where the ALJ drew a negative inference from claimant's lack of medical care because she did not address evidence reflecting claimant's inability to pay for regular treatment or medicine); *see also Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (finding that the

---

[2] In summarizing the record, the ALJ made a single passing reference to Ms. Keiper's July 2014 report of not taking her medication due to a lapse in health insurance coverage. (R. 30). Yet, this observation appeared nowhere else in his opinion and so the Court cannot conclude that it played any part in his decision to deny benefits.

ALJ erred in discrediting the claimant based on an absence of objective support for the limitations where the claimant's lack of insurance prevented her from seeking medical attention). In addition, an ALJ should approach the issue of treatment with caution when a claimant has a mental illness. *Barnes v. Colvin*, 80 F. Supp. 3d 881, 887 (N.D. Ill. 2015). The Seventh Circuit has recognized that mental illness "may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006). The ALJ ignored these considerations in the face of Ms. Keiper's severe depression, anxiety, and ADD, and did not take into account the possibility that Ms. Keiper's symptoms associated with her mental diagnoses prevented her from augmenting her medication with more advanced treatment options, such as therapy.

2. *Playing Doctor*

Second, and in connection with his reliance on Ms. Keiper's conservative treatment, the ALJ improperly substituted his own, non-professional opinion for that of Ms. Keiper's treating physicians. *See Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("[A]n ALJ cannot play the role of doctor and interpret medical evidence."). As stated above, the ALJ assumed that Ms. Keiper's symptoms were not disabling because they never resulted in a trip to the emergency room. Not only does this conclusion ignore Ms. Keiper's financial barriers to treatment as detailed above, but it is also premised on the ALJ's own independent medical determination—*not* that of an expert—that Ms. Keiper must seek emergency treatment in order for her symptoms to be disabling. *See Fields v. Colvin*, 213 F. Supp. 3d 1067, 1072 (N.D. Ind. 2016) (remanding where ALJ assumed claimant's headaches were not disabling because they never required hospitalization). The same can be said of the ALJ's implicit conclusion that Ms. Keiper should have pursued more aggressive post-surgery treatment for her hands if her symptoms continued to

7

limit her to the extent alleged. Here, the ALJ assumed, based on his lay opinion, that Ms. Keiper would have benefited from such treatment; but this overlooks the assessment of her hand surgeon Dr. Patrick Viscardi, dated seven months after her carpal tunnel operation, that despite physical therapy and other treatment, Ms. Keiper's hand pain had reached maximum improvement: "I see no intervention at this point that will make a difference." (R. 354). Without citing to another medical source that contradicts Dr. Viscardi's opinion or otherwise explains *how* any additional treatment would have alleviated Ms. Keiper's symptoms, the ALJ failed to provide a logical bridge where one belongs. *Terry*, 580 F.3d at 475.

### 3. Failure to Consider Entire Record

Lastly, the ALJ erred by "cherry-picking" facts from the medical record to support his conclusions while ignoring evidence from the same record that supports Ms. Keiper's allegations. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). In particular, the ALJ inferred from Ms. Keiper's interests in beadwork and cross-stitching that her carpal tunnel symptoms are not as debilitating as alleged. (R. 33). But in drawing this conclusion, the ALJ failed to consider Ms. Keiper's multiple statements that her symptoms *limit* her ability to do beadwork and cross-stitching: "I like to cross stitch and do bead work, but I can only do so much at a time, you know, because I can't sit long … but with my hands, you know, I can only do so much of that little stuff" (R. 70); "my hands bother me too much to hang on to needles/anything to sew" (R. 222); "hands hurt too much to sew for long periods of time" (R. 249). Although the ALJ acknowledged that Ms. Keiper "limits how much she does cross-stitching and beadwork," he did so only in summarizing the record and provided no explanation

8

as to *why* Ms. Keiper limits herself in this regard. (R. 30). Nor did the ALJ articulate whether or how Ms. Keiper's limitations had any bearing on the conclusions he drew from her interest in these hobbies, leaving the Court unable to trace his logic or meaningfully review his determination. *See Herron v. Shalala,* 19 F.3d 329, 333-34 (7th Cir. 1994) (indicating that an ALJ must explain his analysis of the evidence with enough detail and clarity to permit meaningful review).

The ALJ additionally discounted Ms. Keiper's complaints of hip pain because "[s]he has not received more than routine treatment for her hips and surgery has not been recommended." (R. 33). Notwithstanding the ALJ's errors regarding Ms. Keiper's conservative treatment, the record does not support his explanation. Instead, it appears the ALJ misinterpreted the purpose of Ms. Keiper's June 2016 spinal surgery, which led him to downplay the severity of her alleged limitations. When Ms. Keiper presented to neurosurgeon Dr. Andrew Losiniecki in May 2016, he noted that she had been referred for "evaluation of pain that beings in her back *and radiates down her right greater than left hip*." (R. 630) (emphasis added). Thus, the procedure Dr. Losiniecki subsequently performed was not just for the sake of relieving Ms. Keiper's degenerative disc disease—as the ALJ believes—but to provide pain relief to her lower extremities as well. *Id.* Indeed, Ms. Keiper's treating physician, Dr. Jasveer Grewal, referred her for surgery after medication, physical therapy, and injections failed to ameliorate the constant, severe pain in her lower back *and* bilateral hips. (R. 547-49). Here, the ALJ overlooked record evidence that calls his rationale into question while "cherry picking" facts that support his overall conclusion. *See Denton,* 596 F.3d at 425; *see also Myles,* 582 at 678 ("It is not enough for the ALJ to address mere portions of a doctor's report."). This, too, requires remand.

**B.     Additional Considerations**

On remand, the Court invites the ALJ to revisit how much weight Dr. Viscardi's medical opinions should receive. The ALJ gave "little weight" to Dr. Viscardi's opinions about Ms. Keiper's physical limitations in part because they predated the alleged onset date. (R. 35). But the ALJ must consider *all* evidence in the administrative record; indeed, "pre-onset evidence may be particularly relevant to assessing a claimant's degenerative condition post-onset." *Doherty v. Astrue*, No. 1:11-cv-00838, 2012 WL 4470264, at *5 (S.D. Ind. Sept. 27, 2012); *see also Roddy*, 705 F.3d at 631 (holding the ALJ's failure to address a treating physician's opinions rendered two and three years prior to the claimant's alleged onset date of disability was reversible error); *Johnson v. Sullivan*, 915 F.2d 1575, at *3 (7th Cir. 1990) ("[T]he ALJ should consider the record as a whole, including pre-onset evidence (particularly relating to a degenerative condition) and post-onset evidence.").

## CONCLUSION

For the reasons stated herein, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED:  April 17, 2019

/s/ JON E. DEGUILIO
Judge
United States District Court